IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-01025-CNS

MENGS TESFALEM,

      Petitioner,

v.

JUAN BALTAZAR, Warden;
GEORGE VALDEZ, AFODC,
TODD LYONS, DOI, and
TODD BLANCHE, Attorney General,

      Respondents.

---

**ORDER**

---

Before the Court is Petitioner Meng Tesfalem's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF No. 1.[1] Respondents filed a response. ECF No. 13. Having reviewed the parties' briefing, which demonstrates that Petitioner's challenge to his detention is fundamentally legal in nature, the Court declines to hold a hearing, *see* 28 U.S.C. § 2243, and for the reasons outlined below, the Court GRANTS the petition and ORDERS that Respondents Petitioner from custody within 72 hours of this Order. The Court presumes familiarity with the parties' briefing. *See* ECF Nos. 1, 13.

---

[1] As Petitioner proceeds pro se, the Court construes his filings liberally, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), but does not act as his advocate, see Gallagher v. Shelton, 587 F.3d 1063, 1067 (10th Cir. 2009).

## I.    SUMMARY FOR PRO SE PETITIONER

You filed a petition seeking immediate release from immigration detention on the basis that your detention has been unconstitutionally prolonged. As explained in further detail below, because the Court agrees that the government has failed to demonstrate that your removal from the United States is significantly likely to occur in the reasonably foreseeable future, your petition is granted and the Court orders your release within 72 hours of this order, subject to any conditions of supervised release imposed.

## II.    LEGAL STANDARD

District courts may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.    DISCUSSION

Petitioner, a native of Eritrea who has been in the custody of Immigration and Customs Enforcement (ICE) since June 2025, ECF No. 1 at 4, argues that his detention is improper. Specifically, Petitioner argues that his now 11-month detention is unconstitutional because even though "ICE has attempted to deport [him]" to Eritrea, those efforts have been unsuccessful, and thus his removal "is not significantly likely in the reasonabl[y] foreseeable future." *Id.* at 6. Because Respondents fail to present sufficient evidence to the contrary, the Court agrees with Petitioner.

Section 1231 describes the Government's authority to detain non-citizens with final orders of removal. Specifically, the Government "shall detain" noncitizens during their

"removal period." 8 U.S.C. § 1231(a)(2)(A). In this case, the relevant removal period began when Petitioner's order of removal became administratively final, on August 10, 2023, ECF No. 1 at 22–23. *See* 8 U.S.C. § 1231(a)(2)(B) (the "removal period" begins on "[t]he date the order of removal becomes administratively final"). Thus, Petitioner is detained subject to § 1231.[2]

Generally, after a noncitizen is ordered removed, the government must effectuate their removal from the United States "within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Thereafter, the statute permits—but does not require—the continued detention of certain noncitizens found inadmissible "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id.* at § 1231(a)(6).[3] The Supreme Court has further construed Section 1231(a)(6) to make clear that the despite its permissive language, the statute does not permit the "indefinite detention" of noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 690–96 (2001). Rather, Section 1231(a)(6) permits detention only where removal is "reasonably foreseeable." *Id.* at 699. To effectuate this limit, the Court recognized that it may be "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id.* at 701. However, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

---

[2] For this reason, as Respondents note, Petitioner is not detained subject to 8 U.S.C. § 1225.

[3] In their briefing, Respondents put forth no argument that Petitioner is a risk to the community or unlikely to comply with his order of removal once it can be effectuated.

In this case, Petitioner has met his burden of establishing that there is "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." *Id.* Indeed, it is undisputed that Petitioner has been detained by ICE since early June 2025—roughly 11 months in total, and nearly six months longer than the presumptive six-month period provided for in *Zadvydas*. *See* ECF No. 1 at 20 ("On June 9, 2025 ICE arrested and re-detained me in [the] Aurora ICE processing [facility]."); ECF No. 3 at 6 ("To date, Petitioner has been detained for just over eleven months since his detention in June 2025."). A declaration submitted by Petitioner in support of his application further states that ICE previously tried to remove Petitioner to Eritrea in December 2025 (an effort with which Petitioner was cooperative), but states that "deportation was not successful from their side." ECF No. 1 at 20. Construing the petition liberally, the Court understands Petitioner to mean that the government's deportation efforts were unsuccessful, and thus, Court finds that Petitioner has met his initial burden under *Zadvydas*.

With the burden shifted to the government, the Court finds that Respondents have failed to provide "evidence sufficient to rebut [Petitioner's] showing." *Zadvydas*, 533 U.S. at 701. Respondents state that since Petitioner was detained in June 2025, "ICE has worked to remove Petitioner to Eritrea by preparing a travel document request on behalf of Petitioner," and that "[o]n September 15, 2025, ICE submitted a travel document request to the Eritrean consulate." ECF No. 13 at 3. But Respondents do not address Petitioner's contention that, despite the government's September 2025 travel document request to the Eritrean consulate (which appears to remains pending), Petitioner was

4

unable to be removed in December 2025. To the contrary, it appears that Respondents have not received any response from the Eritrean government at all, as Respondents represent that as of May 20, 2026, they "do not have additional information to present to the Court concerning their efforts to remove Petitioner to Eritrea." *Id.* at 6. Nevertheless, Respondents contend that is sufficient for Petitioner to remain detained, potentially indefinitely.

Respondents are incorrect. The mere prospect that Petitioner may, at some point, be removed to Eritrea does not demonstrate that there is a "significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." *Zadvyas*, 533 U.S. at 701. Indeed, other courts considering Eritrean citizens in similar circumstances have found the opposite. *See, e.g.*, *Paulos v. Noem*, No. 25-3266-JWL, 2026 WL 205564, at *2 (D. Kan. Jan. 27, 2026) ("[O]fficials have attempted to obtain a travel document from Eritrea, but, again, there has been no response to that request over the last six months. Neither respondents nor their declarant . . . has offered any reason for the lack of any response, and thus there is no reasonable basis to believe that Eritrea will respond positively in the reasonably foreseeable future."); *Andemicael v. Noem*, No. 5:25-CV-02999-KK-MBK, 2026 WL 734522, at *7 (C.D. Cal. Feb. 12, 2026), *report and recommendation adopted*, No. 5:25-cv-02999-KK-MBK, 2026 WL 734588 (C.D. Cal. Feb. 20, 2026) ("The Government's difficulties obtaining travel documents for Petitioner is not unusual. The United States has no negotiated repatriation agreement with Eritrea. Eritrea's refusal to

accept its nationals has apparently been cause for discord between the counties.").[4] At bottom, where "immigration officials [rely] solely on the possibility that they may eventually receive the necessary travel document for petitioner sometime in the future," "[s]uch speculation or hope is not sufficient" to justify Petitioner's continued detention. *Paulos*, 2026 WL 205564, at *3.[5]

Because Respondents have failed to demonstrate that Petitioner's removal is significantly likely to occur in the reasonably foreseeable future, the petition is granted.

## IV.    CONCLUSION

Accordingly, consistent with the foregoing, it is HEREBY ORDERED that:

1.    The Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, ECF No. 1, is GRANTED;

2.    Petitioner shall be RELEASED from detention within 72 hours of the Court's Order, subject to any conditions of release set by ICE in accordance with 8 C.F.R. § 241.13;

---

[4] Indeed, the Eritrean government's lack of response, and ICE's inability to remove Petitioner to Eretria in December 2025, is consistent with the June 2025 statement in Presidential Proclamation No. 10949, that "Eritrea has historically refused to accept back its removable nationals." See Presidential Proclamation No. 10949, Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats, (June 4, 2025), available at https://www.whitehouse.gov/presidential-actions/2025/12/restricting-and-limiting-the-entry-of-foreign-nationals-to-protect-the-security-of-the-united-states; see also Sied v. Nielsen, No. 17-cv-06785-LB, 2018 WL 1876907, at *1 (N.D. Cal. Apr. 19, 2018) ("Eritrea historically refused to accept repatriation of its citizens from the United States.").

[5] The Court further observes that Respondents "have seemingly made no efforts [to find] other countries in the last six months" that might accept Petitioner. Paulos, 2026 WL 205564, at *3. However, even if Respondents had identified a third-party country to which they might seek to remove Petitioner, without more, "mere intent to find a third country is too speculative to permit indefinite detention or to overcome [Petitioner's] showing." M.A. v. Baltazar, No. 26-cv-00755-NYW, 2026 WL 809842, at *3 (D. Colo. Mar. 24, 2026) (citing See Momennia v. Bondi, No. 25-cv-01067-J, 2025 WL 3011896, at *10 (W.D. Okla. Oct. 15, 2025), recommendation adopted, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025).

3.   Respondents shall IMMEDIATELY provide Petitioner with a paper copy of this Order;  and

4.   Respondents shall file a STATUS REPORT within 48 hours of Petitioner's release from custody confirming their compliance with this Order.

DATED this 22nd day of May 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge